FRED W. GRAY v. SCHOOL DISTRICT OF NORFOLK.

[FILED OCTOBER 26, 1892.]

1. **Statutory Bonds:** REQUIREMENTS: WAIVER: LIABILITY OF SURETIES. While a statutory bond must conform substantially to the requirement of the statute in respect to penalty, conditions, form, and number of sureties, yet, where two or more sureties are required and it is signed by but one, who by his words or acts waives additional sureties, he will be held liable.

2. **Contractor's Bond:** LIABILITY OF SURETIES. A surety on the bond of a contractor for the erection of a building is bound only in the manner and to the extent provided in the obligation, and if payments are made to the contractor in excess of the amounts due on the estimates, he will not be liable for such excess.

3. **Mandamus to School District.** *Held,* Upon the facts stated in the petition, that *mandamus* would lie.

ERROR to the district court for Madison county. Tried below before POWERS, J.

*Wharton & Baird,* for plaintiff in error.

*Barnes & Tyler* and *John R. Hays, contra.*

MAXWELL, CH. J.

A general demurrer was sustained to the petition in the court below and the action dismissed.   The petition is as follows:

"The relator, Fred W. Gray, of the city of Omaha, in Douglas county, Nebraska, respectfully states and informs the court that the school district of Norfolk, in the said county of Madison, on or about the 26th day of November, 1889, entered into a written agreement with one Martin T. Murphy, of Omaha, Nebraska, whereby the said Murphy agreed with the said school district of Norfolk, to well and sufficiently erect, furnish and deliver in a perfect, and thoroughly workmanlike manner, on or before the 1st day of August, 1890, a school house situated on lots 6 and 7, in block 5, of Koeninstein's first addition to the city of Norfolk, in said Madison county, Nebraska, according to the plans and specifications made and furnished by J. C. Stitt, architect, to the satisfaction and under the direction of said architect.   In consideration of which the said school district agreed to pay the said Murphy the sum of $22,500. Providing in said contract, among other things, that on the first of each month during the progress of the work thereby agreed to be performed, the architect should make an estimate of the materials furnished on the ground and of the work done since the last previous estimate, and upon said estimate being furnished to the said school district in writing, it should thereupon pay the said Murphy eighty-five per cent of said estimate, and the remaining amount should be payable upon the completion of said school building.   And providing further, amongst other things in said contract, that said school district should have the right, at their election, instead of paying on the architect's estimates to said Murphy the amount from time to time found due and payable, to pay the amount for material or labor on said building to the party or parties furnishing

the same, and that the receipts of such party or parties furnishing such material or labor should be accepted by said Murphy as so much cash in hand paid. And providing further in said contract, amongst other things, that should said Murphy, at any time during the progress of said building, refuse or neglect to supply a sufficiency of material or workmen, or cause any unreasonable neglect or suspension of work, or fail to comply with any of the said articles of agreement, the school board of said district, or, any committee thereof, should have the power and right to enter upon and take possession of the premises and provide material and workmen sufficient to finish said buildings, after giving forty-eight hours' notice in writing and personally delivering to said Murphy, and that the expense of such notice and the finishing of the said building would be deducted from the amount of said contract. And providing further, amongst other things, that no assignment of said contract or any interest therein by said Murphy should be of any validity, or binding upon said school district unless the assent thereto of said school district should be obtained in writing. Which contract was duly signed by said school district and the said Martin T. Murphy, all of which will fully appear by reference to the same, a copy of which is herewith filed, marked 'Exhibit A' and made part hereof.

"Second—The relator further represents and informs the court that for the purpose of securing to said school district compliance with the terms of said contract, the said Martin T. Murphy, as principal, and Fred W. Gray, the relator, as surety, executed and delivered to the school board of said school district their bond in the penal sum of $10,000, bearing date November 26, 1889. Providing in said bond that the conditions of the same were such, that whereas the said Murphy had been awarded the contract for the erection and completion of a school building in Norfolk, Madison county, Nebraska, for the agreed price

of $22,500, that if the said Murphy should well and truly erect and complete said building according to the drawings, plans, and specifications prepared by the architect, J. C. Stitt, and that if the said Murphy should in all respects comply with his contract for the erection and completion of said building within the time mentioned in said contract, and should pay all laborers and mechanics for labor that should be performed, and all material-men for material that should be used in the erection of said building, and perform all said contract, then, in that case, said obligation should be void and of no effect, but otherwise should. be and remain in full force and virtue. All of which will fully appear by reference to said bond, a copy of which is herewith filed, marked 'Exhibit B' and made part hereof.

"Third—The relator further represents and informs the court, that on or about the 1st day of December, 1890, the school board of said district notified the relator that said Martin T. Murphy had not complied with the terms of said contract in the erection of said school building, and demanded of the relator compliance with the terms of said contract, under and by virtue of the provisions of the said bond on which the relator was surety, and that accordingly the relator proceeded to confer with the said school board of said school district and the said Martin T. Murphy, and in consideration of the premises and of one dollar and for other good and valuable consideration and of the liability of the relator upon said bond, the relator secured from said Martin T. Murphy, by and with the knowledge and consent of the said school board, an assignment to him, the relator, of all right, title, and interest of the said Murphy, in or to said contract, and authority from said Murphy to collect from said school district the amounts due and to become due on said contract; which assignment and authority was given by said Murphy, in writing, on the 11th day of December, 1890, as will fully appear by reference to the same, a copy of which is herewith filed, marked 'Exhibit C,' and made part hereof.

"Fourth—The relator further represents and informs the court that upon receiving said notice and demand from said board and assignment from said Murphy as aforesaid, the relator, in compliance therewith, and with the knowledge and consent and request of said school district, proceeded to furnish the materials, labor, and skill for the completion of said building in accordance with the terms of said contract, and that thereupon, between the 17th day of December, 1890, and the 21st day of April, 1891, the relator paid expenses, furnished materials, skill, and labor upon said school building in accordance with said notice and demand from said school board, and in accordance with the terms of said contract, and with the knowledge and consent of said school board amounting in all to the sum of $7,742.63, and the said school board paid thereon to the relator on December 15, 1890, the sum of $1,000; on January 2, 1891, the sum of $48.22; on January 9, 1891, the sum of $1,173.43; on February 17, 1891, the sum of $1,109.17; on April 24, 1891, the sum of $10.50; and on April 24, 1891, the sum of $85.50, making total payments of $3,426.82; leaving balance due the relator of $4,315.81, no part of which has been paid. All of which will fully appear by reference to an itemized account of said expenses and payments, a copy of which is herewith filed, marked 'Exhibit D,' and made part hereof.

"Fifth—The relator further represents and informs the court that the relator on the 21st day of April, 1891, completed said building in accordance with the terms of said contract between said school district and Martin T. Murphy, and the said school board of said district received said building from the relator, and were fully satisfied with the completion thereof as performed by the relator; and that there is now due the relator for the expenses, materials, skill and labor performed in the completion of said building as aforesaid the said balance of $4,315.81, and that said school district has sufficient funds in the

treasury thereof belonging to the said building fund to pay said sum to the relator, and that the board of said school district have neglected and refused, and still neglect and refuse to execute and deliver to the relator the necessary warrant on the treasurer of said school district for said sum.

"Sixth—That relator further represents and informs the court that at the time the relator commenced furnishing materials, skill, labor, and expenses of completing said school building it was understood and agreed, by and between the relator and the school board of said school district, that eighty-five per cent of the architect's estimates, which should be made thereafter in accordance with the terms of said contract, and also the balance then due and which might become due upon said contract upon the completion of said building, should be paid by said school district to the relator, and that in pursuance of said understanding and agreement with the said board, and with the full knowledge and consent of said school board, the relator proceeded to furnish the said skill, labor, materials, and expenses for the completion of said building, and did complete the same to the full satisfaction of said school district; that in pursuance of said understanding and agreement the said school board of said district paid to the relator on December 15, 1890, the said sum of $1,000; and on January 2, 1891, the said sum of $48.22; and on January 8, 1891, the said sum of $1,173.43, being eighty-five per cent of the architect's January estimate; and on February 17, 1891, the sum of $1,109.17, being eighty-five per cent of the architect's February estimate; and on April 24, 1891, the said sums of $85.50 and $10.50, being for extras furnished by the relator in the completion of said building; that on or about the —— day of March, 1891, the said school board of said school district at a meeting thereof, adopted and caused to be spread upon the records of said board a preamble and resolution, of which the following is a copy, to-wit:

"The following preamble and resolution was offered:

"'WHEREAS, In the contract with M. T. Murphy for the erection of the school building, now nearly completed, it is provided that the school board shall have the right, at their election, instead of paying on architect's estimates to the contractor, the amount for material or labor on such building to the party or parties furnishing material or performing labor, and the receipts of any and all such parties to the amount actually due them shall be accepted by the said Murphy as though so much cash in hand paid; and

"'WHEREAS, The bond given by M. T. Murphy, as principal, and Fred W. Gray, as surety, for the faithful performance of said contract, provides that if the said Murphy shall pay all laborers and mechanics for labor that shall be performed, and all material-men for material that shall be used in the erection of said building and in performing his said contract, then, in that case, said obligation to be void, but otherwise to be and remain in full force; and

"'WHEREAS, There is a large number of claims filed with this board for material furnished and for labor performed in the erection of said school building which are not paid, but which this board is desirous should be paid, to-wit:

| | |
|---|---:|
| Norfolk Brick & Tile Company | $1,891 80 |
| Chicago Lumber Company | 49 08 |
| T. W. Wheaton | 390 80 |
| L. C. Mittelstadt | 149 39 |
| C. F. Eiseley | 144 39 |
| Acme Pressed Brick Company | 562 25 |
| Jno. Nurer | 6 00 |
| Welshans & Gibson | 248 26 |
| C. W. Babcock & Co | 716 00 |
| Edwards & McCollough Lumber Company | 4 40 |
| August Pasewalk | 6 00 |
| Otto Buckel | 4 65 |
| T. H. Batte | 15 00 |
| Jno. Ingoldsby | 40 00 |
| Adamant Wall Plaster Company | 279 70 |

"'AND WHEREAS, The said Murphy and said Gray have each neglected, failed, and refused to pay any of said claims: Therefore,

"'*Resolved*, That in order that justice may be done to all parties, it is hereby ordered that this board does hereby elect, as is provided it may do, to pay said claims and to tender to said Murphy and to said Gray receipts from said parties instead of cash to the amount actually due said parties.

"'*Resolved*, That the secretary of this board is hereby directed to issue the warrants of the district on the proper fund to the said parties for not more than the amounts mentioned and for not more than is actually due them, and to tender the receipts taken for payment to the contractor, M. T. Murphy, and to Fred W. Gray, instead of cash on estimates as heretofore, except that the claims of the Adamant Wall Plaster Company, $279.70, shall not be included nor paid for want of funds.'

"And the relator further represents and informs the court that said resolution was adopted by said school board without the knowledge or consent of the relators, and that the relator, on being informed that said resolution had been adopted by said board on the 27th day of March, 1891, thereupon proceeded to notify said board that he would refuse to receive in settlement of said contract any receipts for payments made by said board to mechanics or materialmen for labor performed or materials furnished for said building except such payments be for materials furnished or labor performed after the date of the assignment of said contract by said Murphy to the relator, and that upon April 1, 1891, or as soon thereafter as the relator could be heard, he would apply to Hon. Isaac Powers, Jr., judge of the district court of the seventh judicial district of Nebraska, for a writ of *mandamus* requiring said board to pay to the relator all sums of money due upon the estimates for the month of February which had been made,

and estimate for the month of March to be hereafter made, and all other sums that might become due from said board under contract. Which notice was reduced to writing and served upon said school board on the 27th day of March, 1891, and is in the words and figures following, to-wit:

"'To the Board of Education of the School District of Norfolk: You are hereby notified that I demand all moneys due and to accrue upon the contract heretofore entered into between M. T. Murphy and your honorable board for the construction of a high school building in the said district, and I shall refuse to receive in settlement of such contract any receipts for payments made by you to mechanics or material-men for labor performed or material furnished for said building, except such payments be for labor performed or material furnished since the assignment of said contract by said Murphy to me, and you are further notified that upon April 1, or as soon thereafter as I can be heard, I shall apply to Hon. Isaac Powers, Jr., a judge of the district court of the seventh judicial district of Nebraska, for a writ of *mandamus* requiring you to pay to me all sums of money due upon estimate for the month of February already made, and estimate for the month of March, to be made on the first day of April, and shall hold you personally responsible for any misappropriation of the funds due and to become due upon said contract by payment to any other persons, or otherwise.'"

A copy of the contract and bond are set out as exhibits and need not be noticed.

The first objection of the plaintiff in error is that the bond in question is void on its face because it is signed by but one surety (*Cutler v. Roberts*, 7 Neb., 4), while the statute requires at least two. In the case cited it was held that a statutory bond must conform substantially to the requirements of the statute in respect to its penalty, condition, form and number of sureties, and a surety may insist, as a defense in an action on a bond signed by but one surety

where the statute requires two or more, that he is not liable thereon unless he waive the condition. That, we think, is a correct statement of the law, but it is doubtful if it applies to the case at bar.

The contractor and surety were both residents of Omaha, and we are led to infer that the relator did not expect another surety to sign the bond with him but voluntarily become sole surety for Murphy. If such was the case, it would be a waiver of additional sureties on the bond. The fact that he recognized his liability to the defendant for the completion of the building is a strong, if not a controlling, circumstance to show a waiver on the relator's part. The contract provides for monthly estimates. "On the first day of each month, during the progress of the work hereby agreed to be performed, the architect shall make an estimate of the materials furnished, and on the ground, and of the work done since the last previous estimate, and not included in any previous estimate, and when said estimate is furnished said first party in writing, said first party shall thereupon pay said second party eighty-five per cent of said estimate, and the amount remaining on completion of said contract shall become due and payable when said school building shall be fully finished and accepted by said architect and by the school board, or a committee designated by the said board for the purpose, and when the said first party shall be fully satisfied that no liens or claims of any kind exist against said property or any part thereof for which said first party would or could be liable. *Provided,* Said first party shall have the right, at their election, instead of paying on the architect's estimate to the second party the amount from time to time found due and payable, to pay the amount for material or labor on said building to the party or parties furnishing material or performing labor, and the receipt of any and all such parties to the amount actually due them shall be accepted by the second party as though so much cash in hand paid." This provision, if the allegations of

the petition are true, has been disregarded. The defendant no doubt had a right under the contract to pay the workmen and material-men instead of paying the contractor, but to hold the surety liable the payments must be made upon each estimate so far as it is sought to charge the eighty-five per cent. No doubt claims of that kind may be deducted from the fifteen per cent held back till the completion of the contract. The surety had a right to rely upon the conditions of the contract (*Brennan v. Clark*, 29 Neb., 386), and it was held in the case cited that "The sureties on the bond of a contractor for the erection of a building are bound only in the manner and to the extent provided in the obligation. And when the contract provided that the work was to be done under the supervision of an architect named, and payments to be made only on estimates made by him from time to time as the work progressed, and certain payments were made without such supervision and estimates, that the sureties were entitled to a deduction for any injury they may have sustained thereby." (*Simonson v. Thori*, 31 N. W. Rep. [Minn.], 861; *Miller v. Stewart*, 9 Wheat. [U. S.], 680; *Mayhew v. Boyd*, 5 Md., 102; *Brigham v. Wentworth*, 11 Cush., 123; *Paine v. Jones*, 76 N. Y. 274; *Atlanta Nat. Bank v. Douglass*, 51 Ga., 205; *Ryan v. Shawneetown*, 14 Ill., 20; *Judah v. Zimmerman*, 22 Ind., 388; *Calvert v. London Dock Co.*, 2 Keen [Eng.], 639; *Bragg v. Shain*, 49 Cal., 131; *Dundas v. Sterling*, 4 Pa. St., 73; *Weir Plow Co. v. Walmsley*, 110 Ind., 242; *Taylor v. Johnson*, 17 Ga., 521.) If the allegations of the petition are true, therefore, the defendant paid estimates in excess of those provided for in the contract, and to that extent the surety may not be liable. Sufficient is alleged to require the defendant to answer.

Third—The amount due appears to be admitted, but it is sought to apply the same in payment of claims instead of paying it to the relator. This being so, the relator may sustain an action by *mandamus*. The judgment of the

district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.