446 So.2d 558 (1984)
BAYOU ACCEPTANCE CORPORATION, Plaintiff-Appellee,
v.
SUPERIOR HYDRAULICS, INC., Defendant-Appellant.
No. 83-630.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1984.
*559 Michael Harson of Dupuis, Mayers & Harson, Lafayette, for defendant-appellant.
Peter C. Piccione, Jr., Lafayette, for plaintiff-appellee.
Before FORET, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
This suit was brought by Bayou Acceptance Corporation against Superior Hydraulics, Inc., for breach of lease agreements. From the trial court's judgment in favor of plaintiff, defendant has appealed. We affirm.
In 1979 Bayou Acceptance Corporation (Bayou) by written agreements leased computer equipment to Superior Hydraulics, Inc. (Superior). On default of the payments due for January 1982, pursuant to the terms of the leases Bayou sued for the entire balance due under the leases.
Superior's defense was that it was freed from all obligations when it assigned the leases to a third party, Epic Computer Corporation (Epic). The trial court found that although the leases were assigned to Epic (now out of business), Bayou never agreed to the release of Superior from liability for lease payments under the leases. The court thus held that defendant remained liable to plaintiff for the balance due on the leases totalling $47,562.00. Judgment was rendered for this amount together with legal interest from date of judicial demand, attorney's fees in accordance with the lease agreements, and costs.
The sole issue on appeal is whether the assignment of the leases from Superior to Epic, in combination with Bayou's acceptance of the assignments, amounted to a novation. The facts of the case show that the trial court was correct in concluding that a novation did not occur.
The assignment from Superior to Epic was executed on September 16, 1980. The act of assignment stated that Epic would assume "all obligations or liabilities under said leases" and would hold Superior harmless from any and all liabilities.
On November 3, 1981, the attorney for Superior sent a letter to Bayou requesting Bayou's consent to the assignment and a release of Superior from the lease agreements. Attached to the letter was a copy of the act of assignment. On November 11, 1981, Bayou responded by letter stating:
"Bayou Acceptance Corporation accepts these lease assignments as called for in Paragraph 11 of each of these three leases."
Paragraph 11 of each of the three leases provided as follows:
"11. ASSIGNMENT, NOTICES, REMEDIES AND WAIVERS: This lease and all rights of Lessor hereunder shall be assignable by Lessor without Lessee's consent, but Lessee shall not be obligated to any assignee of the Lessor except after written notice of such assignment from the Lessor. Without the prior written consent of Lessor, the Lessee shall not assign this lease or its interests hereunder or enter into any sub-lease with respect to the equipment covered hereby, it being agreed Lessor will not unreasonably withhold its consent to a sub-lease of the equipment. All notices relating hereto shall be delivered in person to an officer of the Lessor or Lessee or shall be mailed registered to Lessor or Lessee at its respective address above shown or at any later address last known to the sender. No remedy of Lessor hereunder shall be exclusive of any other remedy *560 herein or by law provided, but each shall be cumulative and in addition to every other remedy. A waiver of a default shall not be a waiver of any other or a subsequent default."
Bayou thereafter accepted the rent payments from Epic through January 1982.
We find the following quotation from Knapp v. Guerin, 81 So. 302 (La.1919) dispositive of the issue presented:
"... The relation of lessor and lessee is created very much in the same manner as that of vendee and vendor in the contract of sale, in that there must be a thing, a price, and the consent of the parties, and carries with it implied obligations of warranty, etc. R.C.C. 2676 et seq. It is a commutative contract, and, once established, well-defined rights and obligations attach to each party thereto. R.C. 2692 et seq. The relation is terminated in the same way as other agreements. R.C. 2727 et seq.
Therefore, since the defense under discussion is, in effect, a plea of novation, or the substitution of a new debtor, in so far as the obligations of the lessor are concerned, we must look to the articles of the Code dealing with novation for a determination of that issue. Article 2185 reads:
"Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place."
Article 2188:
"All kinds of * * * obligations are subject to novation."
Article 2189:
"Novation takes place in three ways:
"1. * * * When a debtor contracts a new debt, * * * which new debt is substituted to the old one, which is extinguished.
"2. * * * When a new debtor is substituted to the old one, who is discharged by the creditor.
"3. * * * When by the effect of a new engagement, a new creditor is substituted to the old one, with regard to whom the debtor is discharged."
These articles of the Code are found in the chapter which deals with the manner in which obligations may be extinguished. Of course, with regard to the obligation to pay the rent, etc., plaintiff was the debtor to his lessor; and, as to the obligation of maintaining plaintiff in the undisturbed possession of the premises during the term of the lease, Bertrand was the obligor or debtor of plaintiff.
Again, article 2192 reads:
"The delegation, by which the debtor gives to the creditor another debtor who obliges himself toward such creditor, does not operate a novation, unless the creditor has expressly declared that he intends to discharge his debtor who has made the delegation."
Article 2190:
"Novation can be made only by persons capable of contracting; it is not presumed; the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt."
Article 2194:
"The mere indication made by a debtor of a person who is to pay in his place does not operate a novation.
"The same is to be observed in the mere indication made by the creditor of a person who is to receive for him."
We do not have to look to the common law for our guidance in the determination of the subject-matter of this litigation, for it is governed by the provisions of the Civil Code, derived from the civil law. For an able and elaborate discussion of the differences under the two systems, see the case of Viterbo v. [Friedlander] Freidlander, 120 U.S. 707, 7 Sup.Ct. 962, 30 L.Ed. 776. By a reasonable interpretation of the articles above quoted, it is evident that, in order for Bertrand and his heirs to have been discharged from his obligations to plaintiff under the lease, the intention of the latter, not only to accept Fichtenberg in his place and stead, but also to discharge the former lessor, must have been clear and unequivocal. See, also, Austin, *561 Thorpe & Co. v. Da Rocha, Becker & Co., 23 La.Ann. [44] 48; Choppin v. Gobbold, 13 La.Ann. 238; Jacobs v. Calderwood, 4 La.Ann. 509; Mark v. Bowers, 4 Mart.(N.S.) 95; Levy v. Pointe Coupee, 24 La.Ann. [292] 293.
All that plaintiff did was to pay his rent for three months to Fichtenberg, after being notified of the transferthat is, he sent the rent down, probably in the shape of a check in favor of Fichtenberg, by a servant, to whomever was in charge of the premises on the ground floorand on one occasion admitted to an outsider that he had a new landlord. At the date of the transfer plaintiff's negotiable notes were outstanding, and were by the same act conveyed to Fichtenberg. Defendant had the legal right to sell, and there was nothing that plaintiff could have done to prevent the transfer if he had wanted to. R.C. 2009 et seq. In paying the rent he did nothing more than he was bound to do under the law. There is nothing in the record to show that he either expressly or impliedly agreed to release defendant from the obligations of lessor."
In Knapp the original lessor conveyed his interests in the property to a third party. That conveyance did not operate to release the lessor from his obligations under the lease.
Similarly, in Davidson v. Baker Fuel Oil Burner Co., 134 So. 108 (La.App.Orl.1931) the plaintiff executed a contract for the defendant to install a heating system. The defendant assigned the contract to a third party. The plaintiff filed suit against both for defective workmanship. As to the defendant's liability under the contract, the court found that the plaintiff "had a right to call upon Baker because he had never waived his rights against Baker, and never agreed to look solely to Luderbach [the third party] as the assignee of the contract."
In the same fashion, although Superior and Epic entered into an assignment agreement, Superior cannot escape its obligation towards Bayou, the plaintiff. Although Bayou did receive notice of the assignment and accepted payments from Epic until it went out of business, Bayou never explicitly released the defendant from its original obligation. Bayou's acknowledgment of receipt of the assignment was expressly limited by the provisions of Paragraph 11 of the lease. Paragraph 11 does not state that an assignment would release the assignor from the leases. The mere acknowledgment by Bayou of the assignments, therefore, did not free defendant appellant from liability. Bayou, not bound by the assignment of the lease, can still pursue Superior based on its liability under the lease.
For the above and foregoing reasons the trial court's judgment is affirmed. Costs are assessed against defendant-appellant.
AFFIRMED.